**AETNA INSURANCE COMPANY**

v.

**GLENS FALLS INSURANCE COMPANY, South Carolina Insurance Company, the London Agency, Inc., Frank M. Kinnett, E. F. Edwards, and J. W. Boyd.**

Civ. A. No. 13092.

United States District Court,
N. D. Georgia,
Atlanta Division.

March 30, 1970.

Smith, Cohen, Ringel, Kohler, Martin & Lowe, Atlanta, Ga., Robinson, Robinson & Cole, Hartford, Conn., for plaintiff.

George B. Haley, Emmet J. Bondurant, Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., for The London Agency, Inc., Kinnett-Edwards-Boyd, Ltd., Frank M. Kinnett, E. F. Edwards & J. W. Boyd.

Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for South Carolina Ins. Co.

Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for Glens Falls Ins. Co.

ORDER

EDENFIELD, District Judge.

The above-styled diversity action is a consolidation of individual suits which Plaintiff Aetna Insurance Company filed against the named defendants in order to recover on reinsurance agreements which the insurance companies contend are not binding upon them because they were entered into without authorization. The case is now before the court for consideration of South Carolina Insurance Company's motion for partial summary judgment.

The record shows that at all times relevant to the present controversy there has been in effect a reinsurance agreement or "treaty" between South Carolina Insurance Company (South Carolina) on the one hand and Kinnett-Edwards-Boyd, Ltd. (hereinafter KEB) and the London Agency on the other. KEB was general agent for some twenty insurance companies, whereas London was a separate agency which had been organized by several of KEB's partners to handle specialized types of coverage, including reinsurance. The reinsurance treaty between South Carolina and KEB was negotiated in 1958 before The London Agency came into existence and has remained in effect since that time, despite various changes which have occurred in the name of what is referred to herein as KEB. Effective October 1, 1963, the treaty was amended to include both London as well as KEB. In general the agreement authorizes KEB and/or London to place or "cede" reinsurance coverage with South Carolina subject to various limitations. The agreement specified the types of hazards which could be reinsured and specifically stated that Inland Marine business was excluded and could not be reinsured under this agreement.

In August 1963 Aetna purchased all of KEB's insurance business and physical assets, effective January 2, 1964. As of the latter date KEB's general and limited partners became employees of Aetna and were, by the terms of the purchasing agreement, forbidden to engage in the insurance business in any capacity other than as Aetna's employees, except that they were to be allowed to

continue to operate The London Agency for their own account. Aetna purchased no part of London and it continues to be an entirely separate and independent agency, although some of Aetna's employees are also employees of London.

After January 1964 KEB's insurance business was operated as Aetna's Southeastern Department but KEB continued to exist as a legal entity and served as a vehicle through which its partners received payments from Aetna for the sale of the agency. Frank M. Kinnett, a general partner and manager of KEB, was made manager of Aetna's Southeastern Office in Atlanta and was given general supervisory responsibility for all Aetna business transacted through Atlanta. Aetna agreed to and did furnish employees, office facilities, and clerical help to handle KEB's "runoff" business, which upon expiration was renewed by Aetna. From the foregoing it is evident that after January 2, 1964, KEB was in effect "Aetna Insurance Company doing business as Kinnett-Edwards-Boyd."

The present controversy arises out of a reinsurance certificate which purported to reinsure Aetna for 30% of Aetna's risk on an inland marine policy written by the Yorkshire Insurance Company of New York and acquired by Aetna on August 8, 1964.

It is undisputed that on August 10, 1964, Aetna's home office reinsurance department sent a Telex message to the marine department of Aetna's Atlanta office requesting that reinsurance be procured for 80% of Aetna's exposure under the Yorkshire policy; the telegram specifically stated that the risk was an inland marine one. The request was referred to Aetna's chief fire underwriter, Mr. Paul Palmer, who was also an underwriter for the London Agency. After obtaining from Aetna's home office additional information regarding the property to be insured Palmer decided that 30% of the risk should be ceded to South Carolina and he had Aetna's clerical employees type up a certificate of reinsurance and other necessary papers which he approved and then forwarded to London's office. There the papers were signed for London by Mr. Ken Kinnett, who is an official of London but who has no connection whatever with Aetna (although he is the son of Frank M. Kinnett, who is Aetna's Southeastern Manager, who participated in the negotiation of the reinsurance treaty with South Carolina, and who is also a director of London). On the monthly report which London submitted to South Carolina the cession was shown as a fire risk rather than an inland marine risk, but it was not designated as such on the certificate of reinsurance which was delivered to Aetna. It is undisputed that on at least four other occasions London has ceded inland marine risks to South Carolina and that in some instances claims have been paid pursuant to those cessions. Indeed, in October 1964 a claim for more than $900 was paid to Aetna pursuant to the very certificate now in dispute.

South Carolina admits that London and/or KEB was its agent for the purpose of writing reinsurance on certain risks but contends that in light of the restrictions imposed upon that authority London could not have acted for South Carolina in making the cession which is involved in the present controversy. South Carolina also contends (1) that Aetna had knowledge or notice of the restrictions through Mr. Frank Kinnett and that Palmer either knew or should have known of the restrictions; (2) that even if Aetna did not have knowledge of the specific exclusions in the reinsurance treaty it was on notice that London's authority had been restricted to some extent by South Carolina and it therefore had a duty to examine such authority to determine its extent; and (3) that Palmer was acting as Aetna's agent rather than as South Carolina's agent when he made the decision to cede 30% of the risk to South Carolina.

In order for South Carolina to prevail on its motion for summary judgment it must appear to a certainty that the London Agency, insofar as it was acting for South Carolina, exceeded both its actual authority and its apparent authority and that after the certificate was issued South Carolina did not ratify the unauthorized act of its agent. The court concludes that there are important factual issues which must be resolved before any one of the foregoing determinations can be made, including among others questions as to (1) who Palmer was acting for when he decided to cede risk under the Yorkshire Policy to South Carolina; (2) whether the limitations contained in the original reinsurance treaty subsequently were modified or waived by South Carolina and, if not, (3) whether Aetna can be charged with knowledge of the limitations; and (4) whether South Carolina is chargeable with having knowingly permitted its agent, the London Agency, to reinsure inland marine risks.[1]

Accordingly, the motion for summary judgment is denied.

Eva SIMMONS, Administratrix, C.T.A. of the Estate of Seymour Goldberg, Deceased, Plaintiff,

v.

The HOMESTEAD HOSPITAL OF HOMESTEAD, PA., and Irvin M. Golding, Defendants.

Civ. A. No. 68-747.

United States District Court, W. D. Pennsylvania.

March 30, 1970.

Crone & Cohen, Pittsburgh, Pa., for plaintiff.

1. In connection with the latter question the court notes that the fact that a principal knowingly permits an agent to do certain acts (1) may give rise to an inference of

James T. Mohan, Weis & Weis, Pittsburgh, Pa., for defendant Homestead Hospital.

Robert S. Grigsby, Thomson, Rhodes & Grigsby, Pittsburgh, Pa., for defendant Golding.

fact that actual authority existed, (2) may give rise to an inference of fact that the principal has ratified the unauthorized acts of the agent, or (3) may constitute such a holding out as clothes the agent with apparent authority. 3 Couch on Insurance 2d, § 26:63, fn. 17 at 536.